**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL NOVAK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 14 C 801** |
| | ) | |
| **SOPHIA H. HALL, in her Official** | ) | **Judge Rebecca R. Pallmeyer** |
| **Capacity as Judge of the Circuit Court** | ) | |
| **of Cook County, Illinois; TIMOTHY C.** | ) | |
| **EVANS, in his Official Capacity as** | ) | |
| **Chief Judge of the Circuit Court of** | ) | |
| **Cook County, Illinois; MICHAEL J.** | ) | |
| **TARDY, in his Official Capacity** | ) | |
| **as Director of the Administrative** | ) | |
| **Office of the Illinois Courts; and** | ) | |
| **COOK COUNTY, ILLINOIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Novak has a hearing impairment that interferes with his ability to represent himself in state court proceedings. To accommodate him, the court provides real-time court reporting and follows up with an official transcript, e-mailed to him a few days later at no charge. Novak believes these accommodations are inadequate. On February 5, 2014, Novak initiated this lawsuit against two Judges of the Circuit Court of Cook County and the Director of Administrative Office of Illinois Courts, in their official capacities ("State Defendants"), and Cook County, Illinois. He alleges that Defendants have violated his rights under Title II of the American with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983, by failing to make necessary and reasonable accommodations for his hearing deficiency.[1]

Specifically, Plaintiff alleges that Defendants have violated the law by failing to provide him with

---

[1] Plaintiff's second amended complaint also invokes 42 U.S.C. § 1983, but he seeks relief under the ADA and Rehabilitation Act. (Pl.'s 2nd Am. Compl. ¶¶ 6, 76-147.) Defendants acting in their official capacities, moreover, are not "persons" within the meaning of § 1983 and therefore cannot be held liable under the statute. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 58, 109 S.Ct. 2304, 2305 (1989).

(a) unedited electronic transcripts from each of his state court proceedings in a timely manner, (b) Communication Access Real Time Translation ("CART") Services or Certified Real-time Reporter ("CRR") services, (c) a quiet courtroom without delays, or (d) extensions of time to meet filing and other deadlines. Since filing his initial complaint on February 5, 2014, Plaintiff has filed two amended complaints. In the most recent of these, Plaintiff's second amended complaint, Plaintiff seeks injunctive relief against State Defendants Judge Sophia H. Hall, Chief Judge Timothy C. Evans, and Michael J. Tardy, in their official capacities, and Defendant Cook County. Defendants have moved to dismiss Plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motions [35, 42] are granted.

## BACKGROUND

Plaintiff Novak is a *pro se* litigant in a state case pending before Judge Sophia H. Hall of the Circuit Court of Cook County. Since childhood, Plaintiff has had a "severe-to-profound bilateral sensorineural hearing impairment." (Pl.'s 2nd Am. Compl. [32] ¶ 14.) To communicate, he relies on "speech-reading, his residual hearing, reading non-verbal cues, and considerable guessing." (*Id.* ¶ 15.) On September 19, 2013, Plaintiff requested, as an accommodation under the ADA, that the Circuit Court of Cook County provide him with "CART" transcription services to assist him with communicating in the courtroom. (*Id.* ¶ 18.) Although Plaintiff has not defined the term, the court understands that CART, an acronym for "Communication Access Real-time Translation," is a transcript service in real time, which displays words on a computer screen as they are spoken.[2] The day after his request, Plaintiff began receiving CART services in his

---

[2]     *See*   http://www.ncra.org/About/content.cfm?ItemNumber=10149   (hereinafter, "National Court Reporters Association website") (last visited September 28, 2015). *See also, e.g.*, *K.M. ex rel. Bright v. Tustin Unified School Dist.*, 725 F.3d 1088, 1092 (9th Cir. 2013) ("CART is a word-for-word transcription service, similar to court reporting, in which a trained stenographer provides captioning that appears on a computer monitor."); *Poway Unified School Dist. v. K.C. ex rel. Cheng*, No. 10-cv-897-GPB (DHB), 2014 WL 129086, at *1 n.2 (S.D. Cal.

state court proceedings, and continued to receive those services for approximately three months. (*Id.*)  Due to budget cuts, however, Plaintiff stopped receiving CART services in December 2013 and was instead provided with translation services by real-time reporters, as well as official court transcripts, at no charge. (*Id.* ¶¶ 26 n.18, 33, 36, 39.)  Real-time reporters and CART providers use the same equipment and software, but real-time reporting, unlike CART, is not specifically designed to assist individuals who have difficulty hearing.[3]  Plaintiff claims Defendants' failure to furnish him with "unedited CART transcripts in a timely manner," and other accommodations violate his rights under the ADA and Rehabilitation Act. (*Id.* at 2, ¶¶ 69, 72-73.)

## FACTS

Plaintiff specifically alleges the following facts, which the court assumes as true for purposes of Defendants' motions to dismiss.  Plaintiff made his first two appearances before Defendant Judge Hall as a *pro se* litigant in April 2008. (Pl.'s 2nd Am. Compl. ¶ 17.)  Because no CART providers were present for those hearings, Plaintiff was "forced to retain an attorney at considerable expense." (*Id.*)  On September 19, 2013, Plaintiff made a request for CART services with the Circuit Court of Cook County for an emergency hearing scheduled to take place the following morning (the court is uncertain whether this arose in the case pending in 2008, or another matter). (*Id.* ¶ 18.)  Coleen Hogan, who was at that time in charge of the Deaf and Hard of Hearing Access Office of Interpreter Services, advised Plaintiff that he needed to

_____

Jan. 14, 2014) (CART "involves a stenographer who uses a stenographic (or court reporting machine) to create a verbatim transcript on a laptop viewed by [the individual].  The transcript appears almost simultaneously as the words are spoken.").

[3]     The National Court Reporters Association website notes that "CART provides a complete translation of all spoken words and environmental sounds, . . . ."  The court is uncertain what "environmental sounds" are significant in this context and Plaintiff has not explained the significance of any difference between CART services and what the courts refer to as real-time court reporting.

provide more notice for CART services, but that the court would provide CART services for Plaintiff the next morning. (*Id.*)

The following morning, September 20, 2013, during the emergency hearing, Plaintiff's attorney appeared and informed Judge Hall that he intended to seek leave to withdraw prior to the next status hearing, set for September 30, 2013. (*Id.* ¶ 19.) Plaintiff asked for additional time to oppose the motion and, he alleges, Judge Hall told him he would not need to respond at the next status hearing. (*Id.*) After the hearing, the CART provider (who had produced the simultaneous translation of the proceedings) informed Plaintiff that "there would be no [CART] transcript available." (*Id.*) Shocked by this news, Plaintiff immediately e-mailed the Deaf and Hard of Hearing Access Office of Interpreter Services, asking for information about obtaining a transcript. (*Id.*) In a letter that Plaintiff received on September 24, 2013, Milissa Pacelli, the Disability Coordinator at the Office of the Chief Judge, explained that the court did not provide transcripts for hearings at which CART services are made available as an ADA accommodation, but that Plaintiff was free to hire a court reporter on his own if he wished. (*Id.* ¶ 21.) Then on September 30, 2013, Judge Hall granted Plaintiff's attorney's motion for leave to withdraw, despite Plaintiff's reminding her that she had assured him he would not need to respond to that motion at the September 30 hearing. (*Id.* ¶ 22.)

On November 1, 2013, Judge Hall entered a court order permitting Plaintiff to receive CART transcripts at his own expense. (*Id.* ¶ 24.) In response, Plaintiff made an e-mail request to Ms. Hogan and Ms. Pacelli asking that he be provided, instead, with unedited electronic CART transcripts. (*Id.* ¶¶ 24, 27.) Ms. Pacelli responded that the court's obligation was "to provide effective communication" for Plaintiff while he is in court, an obligation met by the CART service, and that copies of CART translations do not exist because, when CART is provided as an ADA accommodation, the translation is not stored and saved. (*Id.* ¶¶ 26, 28.) Ms. Pacelli's November 21, 2013 e-mail message asked Plaintiff what "additional auxiliary aid" might help, if

CART services were insufficient for him. (*Id.* ¶ 28.) Plaintiff responded by saying that he had received CART transcripts in the past and that CART services alone, without the transcripts, are insufficient. (*Id.*) In addition to CART services and transcripts, Plaintiff asked that his case be called last on Judge Hall's court call so that the courtroom is quieter. (*Id.*) He explained, further, that he might need "procedural appropriate accommodations," such as additional time to "organize his thoughts." (*Id.*) The following day, Ms. Pacelli granted Plaintiff's request: she informed him on November 22, 2013 that he would receive, by e-mail, an electronic version of the CART translation notes after each court appearance before Judge Hall. (*Id.* ¶ 29.) A further difficulty arose on November 25, 2013, when the CART services provider refused to include a reference to the identity of the speakers in his/her transcription; when she learned of this, Judge Hall immediately took action and the CART provider did identify the speakers. (*Id.* ¶ 30.)

Later that day, Plaintiff complained to Ms. Pacelli and Ms. Hogan that he had not yet received the electronic CART transcript from that morning's proceeding, and advised that he would again need CART services on January 3, 2014. (*Id.* ¶ 31.) When Ms. Pacelli told Plaintiff that she would "get back to [him] next week," Plaintiff filed an emergency motion to obtain the missing CART transcript. (*Id.*) At the December 2, 2013 hearing on that emergency motion, Plaintiff notified Judge Hall that he had not yet received the CART transcript from the November 25, 2013 court appearance, and that he had experienced numerous "misunderstandings" and "problems" with the CART providers. (*Id.* ¶ 32.)

Again, the response was swift: On December 5, 2013, Plaintiff received a letter from Ms. Pacelli stating that he would be receiving an unedited CART translation from the November 25 court date and that, beginning on December 6, 2013, he would begin receiving "real-time translation" as an ADA accommodation. (*Id.* ¶ 33.) The letter explained that Plaintiff could pick up the certified official transcript of the hearing scheduled for December 6 the following Tuesday, December 10, 2013, at an office across the street from the courthouse. (*Id.*) Again

unsatisfied, Plaintiff e-mailed back, stating that he "[did not] want an official certified transcript" but instead wanted the "UNEDITED copy being sent electronically" that had been offered to him earlier. (*Id.* (emphasis original).)

In December 2013 and early January 2014, Plaintiff communicated with Ms. Pacelli regarding delays in receiving official transcripts from the real-time reporter for two separate court proceedings before Judge Hall (but his own allegations show that the December 2, 2013 transcript was available on December 13, and a January 3, 2014 transcript was available on January 9, 2014). (*Id.* ¶¶ 34-35, 37.) Ms. Pacelli asked Plaintiff to put his ADA accommodation concerns in writing, which he did on January 8, 2014. (*Id.* ¶ 36.) In an e-mail to Ms. Pacelli, Plaintiff stated that instead of official court transcripts, which "are both untimely and edited," he would like "unedited transcripts [ ] sent electronically immediately after court[.]" (*Id.*)

Ms. Pacelli replied to Plaintiff's email on January 10, 2014, informing him that Judge Hall had not changed her decision regarding Plaintiff's ADA accommodations and thus Plaintiff would continue to receive real-time reporter services and official court transcripts at no cost. (*Id.* ¶ 39.) Plaintiff's transcript from his January 29, 2014 hearing was made available on January 31, 2014. (*Id.* at ¶ 41.) Plaintiff picked up the transcript on February 3, 2014. (*Id.*) Two days later, Plaintiff filed this lawsuit against Judge Hall and other Defendants. (*Id.* ¶ 42.) When Plaintiff told Judge Hall at a status hearing that same day that he had filed a lawsuit against her, Judge Hall replied, "You certainly have the right to do that." (*Id.*)

In the meantime, the state court case continued. On February 19, 2014, Plaintiff appeared before Judge Hall on his emergency preliminary injunction motion. (*Id.* ¶ 43.) Judge Hall directed that opposing counsel respond to the motion on February 24, 2014, and that Plaintiff file a reply on February 28, 2014; Plaintiff requested more time, but Judge Hall denied the request, despite Plaintiff's reminding her that he had requested "procedural appropriate accommodation (e.g. additional time)" back in November. Judge Hall directed Plaintiff to file a

written motion or contact the Office of the Chief Judge if he desired further accommodations. (*Id.*) Plaintiff moved that Judge Hall recuse herself from his case. (*Id.*)

Plaintiff did contact Ms. Pacelli in the Office of the Chief Judge. (*Id.*) In a letter that Plaintiff received on February 24, 2014, Ms. Pacelli denied his request that his case be called last, in order to assure a quieter courtroom. (*Id.* ¶ 45.) When he responded via e-mail, Pacelli e-mailed back, asking that Plaintiff clarify his request for extra time to meet deadlines, and Plaintiff explained that the extra time is necessary because of his hearing and language limitations.

Plaintiff appeared before Judge Hall again on February 26, 2014 regarding another of his emergency motions. (*Id.* ¶ 46.) Plaintiff and others waited two hours for Plaintiff's case to be called, a wait that Judge Hall explained was necessary to ensure a quiet courtroom. She also struck the dates she had already set in the case, thus, as Plaintiff puts it, "effectively granting Novak an, albeit indirect, extension of time." (*Id.*) And she scheduled all of Plaintiff's future court dates towards the end of her call at 11:00 a.m. when the courtroom would be quieter. (*Id.*)

On March 8, 2014 and March 10, 2014, Plaintiff contacted Ms. Pacelli asking for a response to his February 19, 2014 request for reasonable accommodation in the form of extensions of time. (*Id.* ¶¶ 48-49.) He also advised that because he had recently been diagnosed with cancer, he needed to receive transcripts electronically rather than picking them up from the court reporters' office. (*Id.* ¶ 49.) Ms. Pacelli requested confirmation from a medical professional verifying details of Plaintiff's disability and the limitations it imposed. (*Id.* ¶ 50.) Plaintiff responded with a letter from one of his medical providers (the contents of which are not in the record), but Ms. Pacelli rejected his request for electronic transcripts in a letter dated April 8, 2014. (*Id.* ¶¶ 53-54.) On April 17, 2014, Plaintiff followed up with another letter from a medical professional regarding his requests for extensions of time and electronic transcripts. (*Id.* ¶ 56.)

Meanwhile, Plaintiff had another status hearing before Judge Hall on April 18, 2014. (*Id.* ¶ 57.) According to Plaintiff, at the very beginning of the hearing, the real-time reporter "screamed" at Plaintiff while the parties were noting their appearances for the record. (*Id.*) Plaintiff also had problems following the proceedings, allegedly as a result of the reporter's translation errors, perhaps resulting from the speed at which opposing counsel was speaking. (*Id.*) Plaintiff demanded that "OCJ [Office of the Chief Judge], Illinois Attorney General, and State's Attorney . . . preserve both the unedited transcript ad the backup audio from this hearing as evidence of the substandard and unprofessional services Novak was receiving." (*Id.*)

On April 18, 2014, Judge HIll granted Plaintiff's request for an extension of time in which to file "his pleading," but ordered that it be a final extension. (*Id.* ¶ 60.) On June 20, 2014, the Office of the Chief Judge notified Plaintiff that from then on, he would receive scanned copies of the official court transcripts by e-mail. (*Id.* ¶ 75.) Defendant Judge Hall transferred Plaintiff's case to another division of the court on October 21, 2014. (Pl.'s Reply [47] at 29.)

## PROCEDURAL HISTORY

Plaintiff commenced this action *pro se* on February 5, 2014. The court granted a motion to dismiss his original complaint, reasoning that Plaintiff's access to real-time reporting as well as official court transcripts at no charge appeared to be a reasonable accommodation; that requiring Plaintiff to wait until the end of the court call to ensure a quiet courtroom did not impose an undue burden; and that the state court's denial of Plaintiff's motion for extension of time during the February 19, 2014 hearing appeared to be based on the fact that the motion was not made in writing, not because of Plaintiff's disability. (Jul. 17, 2014 Order, [29].)

Plaintiff's second amended complaint is now before the court. The State Defendants and County Defendants have again moved to dismiss (State Defs.' Mot. [35]; Cook County Def.'s Mot. [42]), and both motions are now fully briefed.

## DISCUSSION

Under Rule 12(b)(6), a party may seek dismissal of a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1937 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1960 (2007)). Furthermore, while the court at the motion to dismiss stage must accept "all well-pleaded facts as true and view them in the light most favorable to the plaintiff," *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015), it "need not accept as true any legal assertions[.]" *Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014). Moreover, under notice-pleading standards, "litigants may plead themselves out of court by alleging facts that defeat recovery." *Doe v. Smith,* 429 F.3d 706, 708 (7th Cir. 2005); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997).

In their motions to dismiss, Defendants argue that Plaintiff's claims under the ADA and Rehabilitation Act fail on a number of grounds. First, State Defendants argue that absolute judicial immunity bars claims against Judge Hall and any other Defendants against whom Plaintiff asserts claims based on Judge Hall's decisions. (State Defs.' Mot. at 4.) Defendant Cook County, meanwhile, argues that Plaintiff cannot assert claims against Cook County because it was the responsibility of the State of Illinois to provide Plaintiff with reasonable accommodations, and Cook County is not vicariously liable for any acts or omissions of the State. (Cook County Def.'s Mot. at 3; Cook County Def.'s Reply at 2.) Finally, Defendants argue that Plaintiff's second amended complaint establishes that he received necessary and reasonable accommodations, and therefore, no violation of the ADA or Rehabilitation Act occurred. (Cook County Def.'s Mot. at 3; State Defs.' Mot. at 4, 9.) The court addresses each

argument separately below.  The court does not look beyond the four corners of the complaint, *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639-40 (7th Cir. 2008), and holds Plaintiff, a *pro se* litigant, to less stringent standards than imposed on a lawyer.  That said, Plaintiff's allegations in this case present a substantial factual account, supporting the conclusions drawn here.

## A.    Judicial Immunity

State Defendants argue that Judge Hall's decisions to accommodate Plaintiff's disability, such as giving him access to reporting, as opposed to CART services, and free official transcripts, as opposed to unedited transcripts, are protected by absolute judicial immunity. (State Defs.' Mot. at 4-5.)   According to Plaintiff, Judge Hall and the other Defendants are not immune from suit because judicial immunity bars only those claims brought against judges in their individual capacities and "Plaintiff asserts claims against [the Defendants] . . . in their official capacities."  (Pl.'s Reply [47] at 22.)   *See DeVito v. Chicago Park Dist.*, 83 F.3d 878, 881 (7th Cir. 1996) (holding that administrative board members did not have quasi-judicial immunity where board was sued in its official capacity); *see also VanHorn v. Oeslchlager*, 502 F.3d 775, 779 (8th Cir. 2007) (collecting cases that reject judicial immunity arguments in cases brought against defendants in their official capacities).   In cases where defendants are sued in their official—not individual—capacities, "the only immunities available . . . are those that may be asserted by the governmental entity itself (*e.g.*, Eleventh Amendment immunity or sovereign immunity)."[4] *DeVito*, 83 F.3d at 881.  This is due to the fact that official capacity suits against government officers or public officials are actually claims against the government entity for which the officers work.  *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105 (1985).   Because Plaintiff has sued Defendants Judge Hall, Chief Judge Evans, and Michael Hardy in their official capacities only (*see* Pl.'s 2nd Am. Comp. at 1; Pl.'s Reply at 22-23), judicial immunity does not appear to bar these claims.

---

[4]      Defendants do not argue that Plaintiff's claims are barred by any other immunities.  Without deciding the issue, the court presumes that the case can proceed under the rule announced in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which permits a suit against state officials in their official capacities for prospective relief to enjoin ongoing violations of their federal rights.  *See Bruggeman ex re. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).

## B.     Vicarious Liability

Defendant Cook County argues that it is not vicariously liable for State Defendants' actions because it was the responsibility of the State of Illinois, through the Office of the Chief Judge, to provide reasonable accommodations for the hearing impaired.  (Def.'s Mot. at 3.)  In response, Plaintiff asserts that Defendant Cook County is vicariously liable for the decisions of Defendants Judge Hall and Chief Judge Evans acting in their official capacities.  (Pl.'s Reply at 6.)  He asserts, further, that key personnel with whom he communicated regarding his accommodation requests were Cook County employees for whose actions Defendant Cook County is vicariously liable.  (*Id.* at 7.)

"The Fourth, Seventh, Ninth, and Eleventh Circuits have all agreed that when a plaintiff asserts a cause of action against an employer-municipality, under the ADA or the [Rehabilitation Act], the public entity is liable for the vicarious acts of any of its employees as specifically provided by the ADA."  *Delano-Pyle v. Victoria Co., Tex.*, 302 F.3d 567, 574-75 (5th Cir. 2002) (citing, *inter alia, Silk v. City of Chi.*, 194 F.3d 788, 806 (7th Cir. 1999)); *see also* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.")

Cook County is considered a "public entity" under the ADA, *see* 42 U.S.C. § 12131(1)(A), and in viewing the facts in the light most favorable to Plaintiff, the court will assume that as Judges Hall and Evans are employed by the County, Cook County is vicariously liable for any violations of the ADA and Rehabilitation Act committed by them.   The court therefore turns to the question of whether Defendants violated any of Plaintiff's rights.

**C.       Necessary and Reasonable Accommodations**

Title II of ADA and Section 504 of the Rehabilitation Act both prohibit discrimination against the disabled.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason or her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.  In light of the similarities between the relevant provisions in both statutes, as well as their implementing regulations, "courts construe and apply them in a consistent manner."  *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004).

Defendants do not dispute that Plaintiff is a "qualified individual with a disability" within the meaning of the statutes.  (State Defs.' Mot. at 6-7.)  Nor do Defendants dispute that the Circuit Court of Cook County is a "public entity," as required by the ADA, that "receiv[es] Federal financial assistance," as required by the Rehabilitation Act.  (*Id.*)  Rather, the only dispute between the parties is whether Defendants failed to provide a reasonable accommodation for Plaintiff's disability.  *See* 42 U.S.C. § 12132; 29 U.S.C. § 794.  Although the Rehabilitation Act and ADA do not explicitly address accommodations, their implementing regulations require public entities to make certain reasonable modifications for disabled individuals.  *See* C.F.R. § 35.130(b)(7).  Accommodations are "only . . . required when necessary to avoid discrimination on the basis of a disability."  *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006); 28 C.F.R. § 35.130(b)(7).  Necessary means that "the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the

disability." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) (internal citations and quotations omitted). Accommodations must also be "reasonable," 28 C.F.R. § 35.130(b)(7), meaning that "it is both efficacious and proportional to the costs to implement it." *Oconomowoc Residential Programs*, 300 F.3d 775 at 784 (*citing Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 543 (7th Cir. 1995)). A particular accommodation is considered unreasonable if the public entity "can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Plaintiff argues that CART services, unedited electronic court transcripts, a quiet courtroom, and extensions of time for making filings and meeting other deadlines are all necessary and reasonable accommodations, to which he is entitled under the ADA and Rehabilitation Act. Defendants, on the other hand, contend that by providing Plaintiff with real-time reporting and official court transcripts, they have fully satisfied their legal obligations. They also argue that Plaintiff's claims relating to a quiet courtroom and extensions of time are moot because they have been granted by Defendant Judge Hall. The court will address each of Plaintiff's accommodation requests in turn.

### 1.    Unedited Transcripts

With regard to communication-related disabilities, such as Plaintiff's hearing impairment, the implementing regulations of the ADA require public entities to "take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a). Depending on the circumstances, this may take the form of "auxiliary aids" when necessary to "afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of [the public entity's services]." 28 C.F.R. § 36.303(a). "Auxiliary aids or services" are defined by both

statute and regulation, *see* 42 U.S.C. § 12103(1), 28 C.F.R. § 35.104, and include "computer-aided transcription services" and written materials. *Id.*

In its July 17, 2014 ruling, this court concluded that Defendants had provided Plaintiff with reasonable accommodation under the ADA and Rehabilitation Act by affording him access to real-time court reporting, followed by an official court transcript at no charge. In his second amended complaint, however, Plaintiff alleges the ADA and Rehabilitation Act specifically require Defendants' to provide him with his requested accommodation in the form of *unedited electronic* transcripts in a manner that he deems timely.

Defendants' obligation under the law is to ensure that "communications with [Plaintiff] are as effective as communications with others," 28 C.F.R. § 35.160(a), and that Plaintiff has an equal opportunity to participate in, and enjoy the benefits of, [the court proceedings]." 28 C.F.R. § 36.303(a). (Pl.'s 2nd Am. Compl. ¶ 33.) As Plaintiff himself has alleged, Defendants provide him with real-time transcript, thus enabling him to comprehend, in real time, statements made by opposing counsel and by the judge. Defendants supplement that service by providing him with an official court transcript, via e-mail, for each of his court proceedings. Plaintiff insists that he needs written transcripts of court proceedings because, during the proceeding itself, he must look at the words being transcribed on the computer screen and is unable to take notes, as non-disabled individuals can. The transcripts, provided at no cost, accommodate this disparity by allowing Plaintiff to review everything that transpired during the court hearing after the fact.

Plaintiff's allegations do not establish that he has been "excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of [timely electronic unedited transcripts]." 28 C.F.R. 36.303(a). Although the official transcripts are not made available to Plaintiff until approximately two to ten days following the proceeding (*see* Pl.'s 2nd Am. Comp. ¶¶ 34, 37, 41; *see also* Apr. 15, 2014 Tr. ¶¶ 13-20 [22]), there is no basis in this record to conclude that he did not have ample time to review the transcripts in

15

preparation for any subsequent filings. Though Plaintiff complains that his disability makes it difficult for him to meet filing deadlines, hh has not alleged that this difficulty would be ameliorated if the transcripts were available to him more quickly. *See Wis. Cmty. Servs.,* 465 F.3d at 749 (noting that the goal of providing disabled individuals an "equal opportunity" means accommodations are only "necessary to ameliorate the effect of the plaintiff's disability").

Plaintiff's argument that electronic unedited transcripts are "necessary" because he "has to pick up the official court transcripts at his own time, expense, inconvenience, and in a hostile environment" is also unavailing. (Pl.'s Reply at 20.) Picking up the transcript is certainly more inconvenient than receiving it electronically, but the ADA and Rehabilitation Act do not mandate convenient accommodations unrelated to an individual's disability. *Wis. Cmty. Servs.,* 465 F.3d at 748 (noting that "the Rehabilitation Act helps disabled individuals obtain access to benefits only when they would have difficulty obtaining those benefits 'by reason of' their disabilities, and not because of some quality that they share generally with the public"). In any event, Plaintiff's allegations defeat any claim based on this alleged inconvenience: on June 20, 2014, the Office of the Chief Judge notified Plaintiff that "going forward they [would] scan the official court transcript" and e-mail it to him. (Pl.'s 2nd Am. Comp. ¶ 75.) Defendants, therefore *have* already granted Plaintiff's request for electronic transcripts, allowing him to receive them in a timely manner without being forced to travel to the courthouse to pick them up.

Plaintiff now contends this is unsatisfactory; he prefers access to the unedited transcript (that is, the substantially [but not completely] accurate transcript made "on the fly" by a real-time court reporter). Again, however, he has access to a screen displaying the transcript in real-time in court, and has not explained how the court's following up with edited transcripts, rather than the unedited ones, affect his ability opportunity to communicate or participate in court proceedings. To the contrary, official transcripts that omit typographical and grammatical errors should be *more* helpful to Plaintiff. Official "edited" court transcripts also include all discussions

16

made on the record, and Plaintiff fails to allege that the transcripts being provided to him are in any way deficient in this respect.[5] In fact, Plaintiff appears to have more complaints about the *unedited* transcripts being provided to him during the proceedings.

Finally, Plaintiff relies on a New Jersey federal court decision in *Gregory v. Administrative Office of the Courts of State of New Jersey*, 168 F.Supp.2d 319 (D. N.J. 2001) to support his claim (*see* Pl.'s 2nd Am. Comp. ¶¶ 26 n.17, 28), but that case is readily distinguishable. The hearing-impaired plaintiff in that case sought access to a printed court transcript at the same cost charged to non-impaired individuals for a video or audiotape of the court proceedings. The defendants in *Gregory* denied the request, and advised plaintiff that his only options were "purchasing an official transcript . . . or coming to court to review the computer hard disk in person." 168 F.Supp.2d at 324. Plaintiff in that case was, thus, denied an opportunity to communicate and participate in the courtroom equal to that of non-hearing impaired individuals. *Id.* In the case before this court, by contrast, Defendants have provided Plaintiff with printed transcripts free of charge, in addition to real-time court reporting. As of June 20, 2014, they have also agreed to provide those transcripts to Plaintiff via e-mail, a benefit not available to non-impaired litigants: In the Circuit Court of Cook County, non-hearing-impaired civil litigants are able to obtain transcripts from official court reporters for a fee, and only for certain types of cases. *See*

http://www.cookcountycourt.org/ABOUTTHECOURT/OfficeoftheChiefJudge/CourtRelatedServic es/OfficialCourtReporters.aspx (last visited September 28, 2015).

In sum, the allegations do not show that Plaintiff's receipt of unedited electronic transcripts, as opposed to official court transcripts (which are now being scanned and e-mailed

---

[5]     Plaintiff alleges that comments made by the reporter during an April 18, 2014 hearing were omitted from the official court transcript, but it appears that these comments were irrelevant to the court proceedings. (Pl.'s 2nd Am. Comp. ¶ 57.) Plaintiff, moreover, fails to plead facts showing how an unedited transcript with these comments included would have provided him with equal opportunity to communicate or participate in the judicial process.

17

to Plaintiff), would be more effective at providing him with an "equal opportunity" to communicate or participate in court. Nor do the allegations show the desired accommodation will "ameliorat[e] the effects of [Plaintiff's] disability." *Oconomowoc Residential Programs*, 300 F.3d at 784. The court concludes that Defendants have taken appropriate steps to ensure that Plaintiff's communications are as effective as non-disabled individuals. 28 C.F.R. § 35.160(a). For this reason, Defendants have met their duty to provide Plaintiff with a necessary and reasonable accommodation under the ADA and Rehabilitation Act. Plaintiff's requested accommodation, on the other hand, is not "necessary" to prevent discrimination on the basis of his disability—and thus is not required.

### 2. CART Services

Though he has not alleged precisely why, Plaintiff Novak prefers CART services to real-time court reporting. He contends that Defendants' failure to utilize CART services to accommodate him is an independent violation of his rights under the ADA and Rehabilitation Act. (Pl.'s 2nd Am. Comp. ¶¶ 28, 31.) Again, the court disagrees. Plaintiff's allegations do not identify any specific functional differences between the communicative assistance provided by CART and the assistance provided by a real-time court reporter. CART and real-time reporting both transcribe the court proceedings word-for-word, they utilize the same equipment, and the same individuals perform both services. (*Id.* ¶ 33.) To the extent there are meaningful differences between the two services, Plaintiff has offered no basis for a conclusion that CART services alone can ensure that Plaintiff's communications are as effective as non-disabled individuals. 28 C.F.R. § 35.160(a).

Plaintiff has suggested that the real-time court reporting services being provided to him are a deficient accommodation because the reporter does not perfectly translate the communications. But CART services are no better in this regard. In any event, it is incorrect to "assum[e] that 'accommodation' [under the ADA and Rehabilitation Act] means the same thing

as 'a perfect cure for the problem.'" *Stewart v. County of Brown*, 86 F.3d 107, 112 (7th Cir. 1996). Plaintiff's complaint alleges just one example of mistranslation by a real-time court reporter: Specifically, on April 18, 2014, the real-time reporter allegedly "mistranslate[d] and untranslate[d]" parts of the court proceeding. (Pl.'s 2nd Am. Comp. ¶ 57.) The transcript he has attached as an exhibit to the Second Amended Complaint reveals that Plaintiff had some difficulty following the real-time transcript; it does not itself appear to reflect transcription errors. (*Id.*, Ex. B.) And the fact that the simultaneous transcript was not perfect does not demonstrate that Defendants' efforts to accommodate him were unreasonable. Mistranslations and other errors are often corrected during the course of editing a transcript. And Plaintiff himself is not demanding an error-free transcript at the time of hearing; to the contrary, he contends Defendants have wronged him by failing to provide the *unedited* transcript.

Plaintiff also alleges the reporting services are "substandard" for other reasons, pointing to an occasion in which the real-time reporter arrived late. (*Id.* ¶ 61.) Again, however, Plaintiff's own allegations demonstrate that the CART services Plaintiff contends are preferable are also imperfect, and that Plaintiff had a number of "misunderstandings" and "problems" with the CART providers, as well. (*Id.* ¶ 32.) The complaint alleges, for example, that the CART system "often improperly translate[s]" words spoken during court proceedings. (*Id.* ¶ 20 n.12.) The complaint also states that the CART provider failed to appear at two separate court hearings, and on one occasion, the CART provider refused to identify speakers. (*Id.* ¶¶ 17, 30.) Notably, CART services and real-time reporting services are so similar that Plaintiff received real-time services *for five months* before realizing that his CART services had ended. (*Id.* ¶ 55.) Nor is the court moved by Plaintiff's assertion that some of the real-time reporters used by the Circuit Court of Cook County are not certified by the National Court Reporters Association as Certified Real-time Reporters ("CRRs") and some CART providers are not Certified CART Reporters ("CCRs"). Plaintiff has alleged that the reporters who provided him with CART services in Cook County are

in fact CCRs, and the state court's real-time reporters are certified as Registered Professional Reporters ("RPRs") by the NCRA. (*Id.*) Plaintiff has not suggested that any certification would ensure the production of a court transcript that satisfies him. He merely alleges that the U.S. District Court for the Northern District of Illinois requires its court reporters to have CRR certification. (*Id.* ¶ 3.) The fact that the federal court may require certain certifications does not mean that the state court's reliance on another certification is an unreasonable accommodation.

A public entity must ordinarily "honor the [disabled's individual's] choice of [auxiliary aid]" when determining which necessary auxiliary aid or communicative service to provide, but is not required to do so when he requested accommodation "would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial administrative burdens." 28 C.F.R. Pt. 35, App. A; 28 C.R.F. § 35.164. Plaintiff himself has alleged that the Circuit Court of Cook County replaced CART services with real-time reporting in December 2013 because of budget cuts (Pl.'s 2nd Am. Comp.¶ 26), suggesting that budgetary constraints were the reason for the change. In any event, as described above, Plaintiff has not explained why CART services are superior to the real-time services he has been furnished. As for Plaintiff's argument that he is entitled to CART providers or real-time reporters with particular certifications, the allegations show that Plaintiff never requested this accommodation. More importantly, however, the allegations show Defendants satisfied their duty to "afford [Plaintiff] an equal opportunity to participate in, and enjoy the benefits of [the court's proceedings]" by providing Plaintiff with certified real-time reporters and free transcripts. 28 C.F.R. 36.303(a). Plaintiff, therefore, does not state a claim under the ADA or Rehabilitation Act regarding this particular accommodation.

### 3. Extensions of Time

Plaintiff's next claim is that Defendants violated the ADA and Rehabilitation Act by denying his accommodation request for extra time to make filings and meet other deadlines.

Specifically, Plaintiff alleges that Judge Hall denied his accommodation request for an extension of time during a February 19, 2014 hearing. (Pl.'s 2nd Am. Comp. ¶ 43.) He also alleges that the Office of the Chief Judge constructively denied him extensions of time by failing to respond to his request. (*Id.* ¶ 48.) Defendants argue Plaintiff's claim regarding his request for extra time is moot because Judge Hall granted Plaintiff an extension of time during a hearing on April 18, 2014.

Plaintiff's allegations do not demonstrate that Judge Hall's February 19, 2014 ruling was a denial of reasonable accommodation. As this court previously noted, Judge Hall's decision to deny Plaintiff's motion for an extension of time appeared to be based on the fact that Plaintiff had made his motion orally, rather than in writing. (July 17, 2014 Order [29].) Plaintiff does not challenge this conclusion. (*See* Pl.'s Reply at 21.) Instead, he argues that Judge Hall's explanation for her decision "is lame" because she had granted Plaintiff's oral motion for an extension for time at a previous hearing. (*Id.*) He offers no basis for the conclusion that requiring a written motion is unreasonable, or that a written request would have been denied; indeed, Judge Hall granted Plaintiff's motions for an extension of time on at least two other occasions. (*See id.* ¶¶ 21, 58.) Plaintiff not only failed to file a written motion with Judge Hall, but also admits that during a February 26, 2014 hearing, Judge Hall ultimately did provide him with the extension of time he had requested. (*Id.* ¶ 46.) Nor can Plaintiff' assert a claim based on Judge Hall's April 18, 2014 statement that she was not inclined to grant Plaintiff any additional extensions of time to file his pleading. (*Id.* ¶ 58.) Judge Hall did not deny Plaintiff extensions for all future filings in Plaintiff's case.[6] Rather, Judge Hall's April 18, 2014 decision was limited to a specific filing, and she ordered that Plaintiff would receive no more extensions—after she had already granted him (at least) one. (*Id.* ¶ 58.) There will be more

---

[6] For this reason, contrary to Defendants' assertions, Defendant Judge Hall's April 18, 2014 ruling did not moot Plaintiff's claim regarding his accommodation request for additional time.

filing deadlines in the future, and Plaintiff has not been foreclosed from requesting extra time for those future filings.  Nor has Plaintiff suggested that accommodating his disability requires to the court grant every request for an extension, regardless of the circumstances.

Plaintiff contends the Office of the Chief Judge is also somehow liable for denying his request for additional time as an accommodation.  According to Plaintiff, the Office of the Chief Judge "did nothing" after he had e-mailed an accommodation request for extensions of time in writing to Ms. Pacelli.  (*Id.* ¶ 51.)  Contrary to Plaintiff's assertions, the allegations in the second amended complaint show that Defendants did respond to his request for accommodation and appeared to engage in an interactive process with him.  After Plaintiff first requested reasonable accommodation in the form of an extension of time on February 19, 2014, Ms. Pacelli responded on February 24, 2014, asking Plaintiff to clarify his request for extra time.  (*Id.* ¶ 45.) Plaintiff replied to Ms. Pacelli's request by stating that "he has a congenital bilateral hearing loss[.]" (*Id.*)  On March 14, 2014, after Plaintiff had sent two e-mails requesting a response, Ms. Pacelli replied to Plaintiff, requesting certain information from Plaintiff's health provider, as well as more details regarding the functional limitations caused by Plaintiff's disability.  (*Id.* ¶ 51.) Approximately one month later, on April 17, 2014, Plaintiff provided Ms. Pacelli with a "letter from his health provider[ ] for extensions of time."  (*Id.* ¶ 56.)  It is unclear from the second amended complaint whether the letter from Plaintiff's health provider sufficiently answered Ms. Pacelli's information requests.

Assuming Plaintiff did provide Ms. Pacelli with all of the necessary information, Defendant's mere failure to respond to Plaintiff's accommodation request cannot by itself form a basis for liability under the ADA or Rehabilitation Act.  Plaintiff must also allege harm as a result of Defendants' inaction.   As the Seventh Circuit has explained, "the interactive process contemplated by the ADA "is not an end in itself," and it is "not sufficient for [plaintiff] to show that the [defendant] failed to engage in an interactive process  or that it caused the interactive

process to break down. Rather, [plaintiff] must show that the result of the inadequate interactive process" was a failure to identify an appropriate accommodation. *Rehling v. City of Chicago*, 207 F.3d 1009, 1015-16 (7th Cir. 2000). Plaintiff does not claim that, since making his accommodation request with the Office of the Chief Judge, he has been denied extra time to make filings or meet deadlines by Defendants in his state court proceedings. Although Judge Hall initially denied Plaintiff's motion for extra time to file a pleading on February 26, 2014 (a request she later granted), that episode occurred before Plaintiff made his initial accommodation request for an extension of time, and as discussed above, did not constitute a denial of reasonable accommodation.[7] Plaintiff, therefore, does not allege any immediate harm as a result of the Office of Chief Judge's delay in responding to his accommodation request. In other words, he has not been denied the benefit of a program, service, or activity, or otherwise been discriminated against. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794. And while it is possible that Plaintiff's request for extensions of time to make filings and meet other deadlines may be denied at some point in the future, there is no basis for the conclusion that any such decision will be an unreasonable or unlawful one.

Accordingly, Plaintiff has failed to state a claim that Defendants violated the ADA or Rehabilitation Act by failing to provide him with his accommodation request for additional time.

### 4.    A Quiet Courtroom

Plaintiff's final allegation concerns his accommodation request for a "quiet courtroom without waiting for hours." (Pl.'s 2nd Am. Comp. at 2.) Plaintiff himself concedes, however, that "[his] requests for a quiet courtroom were . . . granted" before he filed his amended complaint. (*See* Pl.'s Reply at 20.) On February 26, 2014, Defendant Judge Hall "ordered that all future

---

[7]      Plaintiff claims that he made his initial accommodation request for extra time in the fall of 2013, but his November 2013 letter to the Office of the Chief Judge merely stated that "further accommodations," such as additional time, "might be necessary." (Pl.'s 2nd Am. Comp. ¶ 28.)

court dates be at 11:00 a.m., as [Plaintiff] had previously suggested, which is toward the end of her call and thus provides a quieter courtroom." (Pl.'s 2nd Am. Comp. ¶ 46.) The fact that Plaintiff's requests for a quiet courtroom "[were]n't always honored" before Judge Hall's February 26, 2014 order does not in itself create a violation under the ADA or the Rehabilitation Act, so long as Defendants reasonably accommodated Plaintiff's requests. (See Pl.'s Reply at 20.) Nor does the fact that Plaintiff sometimes was required to wait change things. Because Plaintiff only seeks injunctive relief, any past violations regarding Plaintiff's accommodation request for a quiet courtroom are now moot.

## CONCLUSION

Title II of the ADA and Section 504 of the Rehabilitation do not require public entities to employ any and all means to accommodate disabled individuals. *Tennessee v. Lane*, 541 U.S. 509, 531-32, 124 S. Ct. 1978, 1993, 158 L. Ed. 2d 820 (2004). They merely require necessary and reasonable accommodations to afford the individual an equal opportunity to enjoy the public entity's benefits, services, or programs. With respect to communicative disabilities, public entities have an obligation to provide appropriate auxiliary aids and services to ensure effective communication with the disabled individual. *See* 28 C.F.R Pt. 35, App. A. Defendants have not only provided Plaintiff with necessary and reasonable accommodations, but at times, they have gone above and beyond the statutory requirements in order to provide Plaintiff with effective communication. For the reasons set forth above, the court grants Defendants' motions to dismiss [35, 42].

Plaintiff will have leave to file one further amended complaint within 21 days, but is cautioned that allegations similar to those set forth in the second amended complaint are insufficient to state a claim under the ADA or the Rehabilitation Act. Defendants' motion to quash subpoenas [43] is stricken as moot.

24

ENTER:

Dated: September 30, 2015

_____
REBECCA R. PALLMEYER
United States District Judge